All right, last case of the day. Association des Eleveurs de Canards I'm going to totally butcher that, so we'll leave it there, versus Kamala Harris. Thank you, Your Honor. May it please the Court, I'd like to reserve five minutes of my time for rebuttal. California Health and Safety Code, Section 25982, regulates California's market by prohibiting the sale, in California, of products that result from a particular animal husbandry practice that the state considers to be cruel. California's statute is not preempted by the Poultry Products Inspection Act because it does not address matters within the scope of federal law. The PPIA establishes inspection, sanitation, and labeling standards that help ensure that poultry products sold in the United States are not adulterated and are properly labeled. The PPIA does not address animal husbandry practices, including how a bird was fed on the farm while it was still alive before it reaches the slaughterhouse or processing plant. California's law is also not an ingredient requirement within the express preemption provision of the PPIA, as the District Court here concluded. The term ingredient requirement is a term of art, and what it means is a regulation that designates substances that can be added to a finished poultry product. As one example, the USDA allows orange pulp to be used in ground turkey, but not citric acid or silicone dioxide. As those examples show, federal ingredient requirements do not address animal feeding practices, such as bird force-feeding. Plaintiff's fundamental theory of preemption in this case is premised on the assumption that because the USDA doesn't prohibit the sale of liver made by force-feeding a bird, California's law must be preempted. But as the Fifth and Seventh Circuits held in the Cavell and Pacadoro cases, the PPIA does not express a judgment that any product that can pass USDA inspection must be permitted to be sold within every state. The PPIA's central purpose is to ensure that products that are sold in the United States are not adulterated and they're properly labeled, so that when a consumer goes to the grocery store here, she knows that whatever products are available to him or her are safe and not deceptively labeled. Is there any record evidence one way or the other as to whether force-feeding is required to produce foie gras? Your Honor, there isn't record evidence. The legislative history reports accompanying the enactment of Section 25982 talk about different methods of possible production of foie gras, but there isn't record evidence in the summary judgment record that suggests that one method of feeding is required to produce the product. But it doesn't matter to this case in any event because an ingredient requirement doesn't address an animal feeding practice, so it wouldn't matter what methods may be available to produce the product. Your Honor, the district court's judgment also rested substantially on the national meat case, but if anything, that case counsels in favor of reversal. There, the court acknowledged that the federal meat inspection laws generally don't foreclose ordinary regulation of the commercial sales of products from slaughterhouses, and the specific defect of the law there that the U.S. Supreme Court found was that a regulation of sales in a state's market operated to intrude into the area that was expressly reserved to the federal government. But we don't have any similar intrusion here because the PPIA is silent on animal feeding practices entirely. And so, if anything, national meat shows that the district court erred in granting summary judgment in favor of plaintiffs. Another point I'd like to raise is that, you know, plaintiffs' understanding of the PPIA as creating some kind of guarantee that they're entitled to sell their products anywhere in the United States is, I think, entirely inconsistent with the scope and purpose of the statute. And if Congress had intended for the law to have that kind of far-reaching effect, I think we would have seen a preemption clause that looks quite different than the one we have here. We would have something that sounded more like, no state shall prohibit the sale of any product approved by the USDA, but that's not what we have here. And as I mentioned, the Fifth and Seventh Circuits have expressly rejected any understanding of the PPIA or the federal meat inspection laws that would read that kind of preemptive intent into the statute. And at the end of the day, you know, this result is not surprising. You have federal laws that differ from state laws. It's an inherent part of the federal system that states can make different judgments from the federal government. For example, the federal government may not outlaw fireworks, for example, but states may. The federal government doesn't ban all plastic products that contain BPAs. Different states have made different judgments. What's the ingredient here we're dealing with? Your Honor, the law here is not a regulation of ingredients as understood within the PPIA. The plaintiffs here claim that what the quote-unquote ingredient is is force-fed bird liver, but that's an erroneous understanding of the PPIA. The PPIA doesn't distinguish between animal feeding methods, and the means by which the animal is fed is not part of the quote-unquote ingredient. And that is why— The PPIA prohibits states from creating their own ingredient requirements. It doesn't apply to California, which has a ban on how these animals are treated, and they're treated cruelly. You have to open their mouths, you stuff the device all the way down their throats, jam it in so that it affects their livers. Their livers become bloated. There's a reference to ingredients, and it refers to spices, preservatives, and food binders. That's the definition of ingredients. We don't have that here. Not putting spices or preservatives or food binders. Your Honor, that's exactly right. What? Your Honor, that's exactly right. When the USDA regulates ingredients, it does precisely what Your Honor referenced. It designates the substances that may or must be used for processing a finished poultry product. Ingredient requirements do not address how a bird was fed well before it reaches the slaughterhouse or processing— Not only how the bird is fed, but it's how the bird is cruelly fed. Your Honor, that's— That's what it's about. That's absolutely correct, Your Honor. The PPIA does not involve animal treatment, animal cruelty, or animal welfare. Well— And that underscores why California's law is not preempted, because the two laws address entirely different things. Well, the other statute, the PPIA, deals with slaughterhouses, labeling, and packaging. What it deals with. That's absolutely correct, Your Honor. It doesn't deal with jamming food down the throats of geese or ducks. Your Honor, that's— That's all right. That's my position. Your Honor, and that's absolutely correct. I think it's absolutely cruel. That understanding of the PPIA is— Now, people don't agree with that. They think it's fine to do that so they can have their foie gras, you know, talk about it. Your Honor, that's correct. And that understanding of the PPIA is grounded in the National Meat case, the Impacadora case, the Cavell case, a reading of the statutory sections of the PPIA, and the USDA's implementing regulation are focused on exactly what Your Honor was mentioning, regulating the slaughter inspection and processing of poultry products and not addressing animal feeding practices on the farm. If the Court has no further questions, I'd like to— We don't have a preemption issue here. You want to save the rest of your time then? Yes, Your Honor. Thank you. All right. Thank you. Good morning, Your Honors. It may please the Court. My name is Michael Tenenbaum. I represent the poultry producers who are the plaintiffs below. I'd like to start just by addressing what I think is a point of clarification about the statute that we're challenging and the statute that we're not challenging. When I hear talk about how the feeding of ducks is cruel by using forced feeding, there's no reason to quarrel with the finding by the legislature in that here because that's the subject of a completely separate statute. Section 25981 was passed by the legislature at the same time. It says that no person may force feed a duck in the state of California, which is where California has police power to regulate all of the ducks within its borders, and that doesn't take place anymore. The farmer who was put out of business by that statute is here. He doesn't force feed a single duck in the state of California, and every duck and goose in this state is free from forced feeding. We're talking about the H&S 25981 prohibiting. No, 25982 is the one that's at issue here. So your argument is that this is an ingredient requirement. Yes. The 25981 regulates a process. 25982 says to my clients that if you look at a brief, we put it from the excerpts of record on page 6, we have a copy of the label of Hudson Valley foie gras products. It's a torchon in this case. The very first ingredient it says, ingredients, is moulard duck foie gras. It doesn't say that the duck was force-fed or non-force-fed duck foie gras. It doesn't say spoon-fed foie gras. It doesn't say organic foie gras. It doesn't say pasture-raised foie gras. It doesn't impose any requirement. As long as you specially feed and fatten your duck, the resulting product is good for sale. According to the USDA, California says no. They say that this product can't be sold here. Why? Because of the presence in California of an ingredient that they don't like. It would just be like California saying some people think slaughtering a chicken and cutting its head off and letting it bleed to death is cruel, but that is not what we're dealing with here. California could not say we're going to ban chicken unless it died a natural and comfortable death. We're going to say that products must contain comfortable chicken. They couldn't say that it has to be organic or pasture-raised. These are not federal requirements. Those are by definition additional and different requirements than the federal law allows. But the requirement has to do with how the birds were treated when they were alive. It doesn't have to do with the ingredient itself. It's not an ingredient requirement, is it? It's an ingredient. That's why I don't understand your argument. California does not say you can't use the ingredient. It just says it just governs the treatment of the animals, but the product can still be included. The ingredient that is offensive to California is an ingredient that is defined by the way it's made, in this case, force-fed or organic, for example. It's an organic requiring all chicken products to contain organic chicken in the state is an ingredient requirement even though organic connotes a lot of things about how the chicken is raised. Let me give you another example. What if the state had something to do? And by the way, the ingredient that they ban and the method are one and the same. The USDA has said the only way you get this ingredient is by force-feeding, so it's necessarily the product of it. The force-feeding creates the ingredient. Imagine the federal government regulated iced tea and said no state may impose an ingredient requirement on iced tea. Could California say, well, we're not going to ban ice because that would be pretty obvious. It's a main ingredient in iced tea. We'll just ban any product that's the result of freezing water anywhere in the world to below 32 degrees? That's why I asked counsel whether there's record evidence that force-feeding is required to produce foie gras, and she indicated that there isn't any evidence on that. That is an incorrect representation. I can point the court to supplemental excerpts of record 041 and 048 where two of the farmers say they are unaware of any verified method to achieve foie gras without force-feeding. And secondly, what the Attorney General acknowledges, it's irrelevant. It really doesn't matter because what the USDA says is that if it's specially fed and fattened, the resulting product is good for sale here. And it doesn't matter how it's specially fed and fattened, with a silver spoon, with a tube, or otherwise, the resulting product, that liver product, is an ingredient. It's the very first and most valuable constituent. In fact, to sell foie gras without that would violate the Poultry Product Inspection Act, which talks about what an adulterated product is. An adulterated product is one that is missing a valuable constituent or that valuable constituent has been altered in any way. And so my clients sell these products. The district court understood that. The district court looked at the Supreme Court's decision in National Meat. And the only cases that my adversary cites are these horse cases, Cavell and Embarcadour from the Fifth and Seventh Circuits. Those are totally different. Here's why. First of all, they dealt with horse products. There are no ingredient requirements for horse products in the United States. No one can point to one, so those have never been challenged. Secondly, what Judge Posner said in the most recent one of those decisions was that the reason you could ban horse meat is because, quote, states have a legitimate interest in prolonging the lives of animals that their populations happen to like. And Americans love horses and don't want to have those horses slaughtered at all for their livers, for their meat, or otherwise. What this court has said is that you can slaughter a duck. You can slaughter as many ducks as you want. You can serve every part of the duck. You can even serve of a force-fed duck every part of the force-fed duck, just not the liver. And that operates as an ingredient requirement when it's contained in pork. What the Supreme Court said, by the way, in rejecting that analysis, the Ninth Circuit had had a case, National Meat Association v. Harris, which started out of the Ninth Circuit. And what Judge Kaczynski wrote in that opinion was states are free to decide what animals get turned into meat. And the animals he was talking about in there were pigs. And I would agree with the Ninth Circuit in that case. The pigs in that case, in order to go to slaughter, were being bulldozed and dragged in a cruel way. And California said, oh, you can slaughter some pigs and sell their meat, but you can't slaughter and sell the meat of pigs that were cruelly treated in this way. And they said that the states are free to decide that. The Supreme Court said no. Two things. First of all, we control what takes place in the slaughterhouse, just like the federal government controls what takes place in terms of the ingredients. And you cannot achieve with a ban on sale because that's what the state came back with and the animal rights groups came back with. They said, well, we'll just ban the sale of any product. That's the result of this cruel slaughter process. And the Supreme Court said you can't do that. You'd frame it that way. You'd just make a mockery of the preemption requirement. Because if California could just say, fine, we won't banówe're banning forced feeding. We won't ban the ingredients. We'll just say you can't sell it if it's the result of a process. It's functionally the same. And this court should adopt the functional approach that the district court recognized the Supreme Court dictated. Can you explain to me how under Section 451, which is the Congressional Statement of Findings, the state puts a lot of weight into that. And what's your response to their argument that 451 expresses Congress's intent and it's not about banning forced feeding of birds, or the sale of forced feeding of birds? Yes, Section 451 supports our position, I think, Judge Owens. It says that the regulation by the Secretary of Agriculture and cooperation by the states are appropriate to prevent and eliminate burdens upon such commerce, commerce in poultry products. It says one of the points of the whole point of the statute is to allow the circulation of interstate commerce of poultry products, whether they be foie gras or fried chicken. Chicken wings, chicken breast, duck breast, it doesn't matter. Those poultry products are supposed to circulate unburdened by state regulations, especially when it comes to dictating the ingredient requirements. And I would just call the court's attention again, you cannot sell this productó I was going to bring an example with me, but we have examples in the recordó you cannot sell torsion to duck foie gras, or you couldn't during the two years that this law was beingótwo and a half yearsóbeing enforced, only because of the presence of an ingredient in that product that the state doesn't like the way it's made. Could the state say no non-kosher product may be sold in California, poultry product? We're not regulating the ingredients. We're just talking about the kosher process, and it can't come in contact with a pig, and only halal meat can be sold. We're not talking about an ingredient. Of course that's an ingredient. The main ingredient in a kosher chicken wing is the chicken wing. The main ingredient in foie gras is the duck liver. And it doesn't say it has to have been fed bottled water. It doesn't have to say it had to have a particular lifestyle or been free from any form of feeding. Also, just as a matter of fact, in the record, the only representation in the record about cruelty in the record comes from California's Department of Food and Agriculture. California's own department, which regulated the one farm that was here, said foie gras does not involve cruelty at any time. But that is a red herring. To focus on the cruelty has nothing to do with this, because some people think cutting a chicken's head off is cruel, or keeping a cow inside a barn is cruel. And that's not what this is about. It's about the final ingredients that go into a product. And that's the only reason my clients' products were unsaleable during those two and a half years. What did you say it's all about? It's all about what the presence of an ingredient in the final product sold in California. It's the presence of that ingredient, regardless of how it's made. The federal government doesn't say anything. For example, it doesn't say it has to be from a brown duck or a white duck. That's how you define an ingredient. That's exactly right. The USDA defines ingredients a lot broader than just spices and chemicals. The USDA explains what the ingredients are. There are single-ingredient USDA products. If you sell chicken breast with nothing else, no spices around it, you are selling a single-ingredient poultry product. And we cite in our brief the statute that talks about single-ingredient products. Then we also make products that have additional things in them. For some, there's a defined definition. Take the example of, I think one of them is a block of foie gras. Are you saying that the way we're talking about a duck that's half Muskogee and half Pekin, that's the way they do it? They do it with other ducks, too, but that's in the record of the ducks that are used. That's correct. Any other situations we know of where the food is rammed down the throat of the creature? Rammed down. I'm just at a loss to— Hold it. Hold its neck up. Right. And just force it right down so that the liver bloats. Right. But, Your Honor, any objection to that process is covered by Section 25981. No one can do that in California. What? No one can do that in California, and we're not challenging that. Section 25981 bans that process that you dislike. But that process is legal in other parts of the state. What if California banned brown ducks from becoming food, or the cute white ones, or the cute yellow ones? Could they say a product may not be sold if it's the result of a brown duck? Would the state say, this doesn't regulate an ingredient, this just regulates a color? USDA doesn't say anything about the color of the duck. But brown duck or white duck, once it's in a poultry product, once it's been killed and processed and put into a poultry product, is an ingredient, just like organic chicken or kosher chicken or pasture-raised chicken. Those are ingredients. Try to tell Grandma that she can't use chicken in her soup, which is her chicken noodle soup, which she thinks is an ingredient, because it's not organic. Oh, Grandma, I'm not trying to tell you what to put in your soup. I'm just trying to talk about how the farm, how that poor chicken was raised on a farm. It's an ingredient requirement. We're not talking about chickens. No, we're talking about ducks. We're talking about ducks. Right. Tell my clients that they can't, even though the USDA says all your products are good to go. What would happen if those products were sold during the ban is that a federal marshal would say these are good to go under federal law. They meet every requirement. And a state police officer could say, but wait a second, I want to inquire whether the liver product in there, the liver component, whether it's 50 percent or 85 percent or 100 percent, we gave examples of each in the record, whether that was made from a force-fed duck or not. Your argument only works if the definition of ingredient requirement is expanded to include the processes by which the ingredient is really produced. That only makes sense if it's expanded to include the color. Regardless of the process that's made, if the final resulting product is an ingredient, California does not get to ban that ingredient based on how it's made, based on how much it costs, based on whether it's the process or the color or otherwise. And I'm not expanding it. It's the Supreme Court that's expanding it. In National Meat Association, the Supreme Court read that preemption clause in the same section to say this preemption clause sweeps widely. Those aren't my words. That's Justice Kagan in a 9-0 opinion. The preemption clause sweeps widely. The point is we want a uniform standard in this country of poultry products. Not me, Congress. Congress said there should be a uniform standard for the ingredients in poultry products. And a Frankfurter or a filet mignon is not something different when you go in a different state based on the particular state's idea that it should be pasture-raised or grass-fed or otherwise, or halal for that matter. States don't get to put those requirements on the ingredients, even if they try to define them. What the state has done, and I'm afraid that it's almost working with the court, is the state has framed this in an artful way to try to avoid calling it an ingredient requirement. And what the U.S. Supreme Court has said, if the sales ban in National Meat, which was against, we could all relate to that. Who wants to buy pork products that were from a pig that was cruelly dragged to its slaughter, that couldn't walk, a non-ambulatory pig? The state said we're going to ban the slaughter of those pigs. Congress said, sorry, the Supreme Court said you can't do that. So they said we'll just ban the sale of those products then. We'll stop the practice and we'll ban the sale. The Supreme Court said no, you cannot do that. You can't frame your ban on sale. Well, that isn't our case. That is our case because what the state has done is framed a ban on sale of a product based on its ingredients, and they've defined the ingredient just the way I gave in my ice example as the way it's made. If the court agrees with me on the iced tea example, I don't see how the court shouldn't affirm. If Congress had said we dictate the ingredients of iced tea, could the state say, well, I just want to talk about the process of making ice. Keep storing water at less than 32 degrees. I didn't say ice. I didn't mention it. I just said any product that's the result of that process, or organic otherwise. Here's what the Supreme Court said. If the salesman were to avoid the FMIA's preemption, which has the same preemption clause, then any state could impose any regulation on slaughterhouses in that case or here on ingredient requirements just by framing it as a ban on the sale of meat produced in whatever way the state disapproved. We know the state of California disapproves of the way this was made. Big deal. It stopped every single duck within its police power from being fed that way. But what it can't do is redefine what a USDA ingredient is and what a product that contains valid, approved USDA ingredients are for sale in the state. And Judge Wilson got that right. He looked at the Supreme Court case, and he said we need to adopt a functional approach. That's what the court said. Otherwise, quote, we make a mockery of preemption. That would be the next law that would come down. We thought every product should be made organically. So we'll say, we won't say ingredients must be organic chicken. We'll say a product may not be sold in California if it's the result of inorganic farming, and that includes a chicken product. Now the state has essentially dictated that the ingredients in every chicken product be organic chicken and tried to suggest that that's not an effective ingredient. That doesn't impose a requirement on the ingredients. The Supreme Court has told us 9-0 by Justice Kagan that that's exactly what it does. It's a functional approach. You can't achieve with a ban on sale what you can't do otherwise.  The state, in a supplemental letter to the court just last week, cited the USDA brief in a separate case, and I want to call the court's attention to two statements in that brief. One is in a footnote the state says, Plaintiffs' attempt to maintain a distinction between force-fed foie gras and non-force-fed foie gras is untenable, as any product labeled foie gras is almost certainly the product of a force-feeding process. So it's definitional. You're banning foie gras based entirely on the essential manner of what it's made. Secondly, the USDA contemplated that that's exactly how you make foie gras. It's in the statements of the agency itself. It's not banning selling the liver of a duck that's a product of Muskogee ducks and the Orange Bill duck. It's not banning that, but what it has the effect of is banning the force-feeding. Do you think the duck enjoys being force-fed? I don't think that's relevant, Your Honor, and I think that's already covered by a separate statute that bans that. It doesn't really matter. California doesn't get to determine the enjoyment of a New York duck or a Canadian duck. Do you think the duck enjoys that? Well, they have to grab the duck and hold it. I don't think the duck enjoys living just to grab other male ducks. And jam the thing through its throat. Right, but I just don't think that that's the relevant analysis. The relevant analysis is not what takes place on the farm because that's already covered under California law. There is no police power by California to dictate to the farmers. My clients can certainly force-feed their ducks and make their products in other states and countries, right? But then when that product comes here and it's USDA approved, the only basis for banning it is someone says, I don't like that you used force-fed duck. How about hand-picked oranges as opposed to, you're talking about oranges, hand-picked oranges versus machine-picked oranges? Could California say we're going to ban if that was a USDA ingredient and the federal government regulated orange juice and said they must contain oranges and doesn't care how they're picked? Could California say only hand-picked oranges may be sold, orange juice may be sold in California? But it seems to me at the end of the day your argument turns on whether foie gras can be produced without force-feeding. I think that's what the whole, I mean, because if someone could produce foie gras without force-feeding, then there wouldn't be a limitation on the ingredient. But then without that limitation, doesn't your argument fall apart? No, Your Honor, because the federal government imposes no requirement to say specially fed. The fact that you could make something in ten different ways doesn't mean that the state is free to ban the ingredient in the product if it's made in one of those ten ways. Why not? Because that's an ingredient requirement. Why does the federal government care? It wants products that are wholesome, unadulterated. It has specific provisions to govern slaughterhouses, packaging, labeling, all for safety purposes and ingredient requirements. So if a particular state wants natural foie gras, it's not prohibiting the ingredient requirement. You can agree or disagree with that policy choice. But if you can include the same ingredient, why would Congress care if California wants a more natural produced foie gras versus force-fed foie gras? Because a chicken breast in the United States, under the uniformity, the Court left out the statement about uniformity, Congress seeks uniformity in the ingredients of products everywhere. Right, but if the ingredient, let's say, again, this is I think one of the first questions we had in argument was, is there any other way for these birds to have enlarged livers other than force-feeding? The record indicates that there's no known way. It's like saying, is there a cure for cancer? Nobody knows. The answer is no. But it seems to me that's the question because the ingredient is the enlarged liver, correct? The ingredient is liver, yes. Enlarged liver. Ducks have a liver whether they're force-fed or not. That's correct. Okay, so is the ingredient enlarged liver or liver? Well, it's liver. I mean, we make products that are just duck liver, but the foie gras products happen to contain enlarged duck liver, yes. Okay, so in your view of the case, for it to be foie gras, it must have an enlarged liver, correct? It has to be specially fed and fattened, yes. You couldn't commercially sell it. That's what I'm saying. It has to be specially fed. Specially fed and fattened, right. So if there was a way to breed a duck that had an unusually large liver, that would not fall within California's prohibition, correct? California only bans force-feeding in California, so it wouldn't. Right. 25981, right. So, again, it all has to do, I guess, for your case to be preempted or for this law to be preempted, we have to agree with you. I'm not saying maybe we do agree with you, but just so I can analyze this properly, that the only way this works for you is that if the ingredient is, in fact, the enlarged liver, and that the only way to get that ingredient is through force-feeding. It turns out that the record demonstrates that that is the only way, but I don't believe that's a necessary condition, and here's why. The federal government says foie gras shall be obtained exclusively, those are the exact words, exclusively from specially fed and fattened ducks. It doesn't say specially fed and fattened ducks that had X for breakfast or X for lunch or that were fed with a tube or otherwise, and so it makes no requirement on those things. For California to say, oh, yeah, you can sell your foie gras here only if it's made with a specially fed and fattened duck that is not force-fed is an additional requirement. It's a requirement on the resulting product, the ingredients of the resulting product. It doesn't dictate, like I just said, it doesn't matter what the duck had for lunch. California could try to dictate, say, or if they think it was only grass-fed or corn-fed or soy, take a perfect example, corn-fed. Could California regulate if a hot dog cannot be sold unless it contains corn-fed beef? I don't know. I guess I'm just trying to say why you keep asking hypotheticals like that, and I guess why couldn't it? Because that's an ingredient requirement. Corn-fed beef is still an ingredient in the final product, whether the animal was fed corn or not three weeks earlier. But to be clear, then, the ingredient in this case is an enlarged liver. That's your argument? That is for the foie gras products at issue, it's an enlarged liver, yes. And does California prohibit the sale of birds with an enlarged liver? It effectively does. Okay, so you add the word effectively. Why does it effectively do that? Because the only way to get there is if you force-feed them, correct? Yes. Okay, so for your argument, get back to my original point, your argument, for us to agree with you, we have to agree that the only way that this product can be served in California is through force-feeding. There's no other way to do it. I think if you agree with that, then it's automatically preempted and there's not even a question. I think to tell a producer who puts out a product that complies with federal law that that ingredient's in there, it's the present. California doesn't go to the farms in New York and Canada. California only can go through the grocery aisles and go through food in California and say, this ingredient has a problem with it, we don't like the way it was made. And to put an additional requirement that it not just be specially fed and fattened, as the USDA says, but it has to be specially fed and fattened without using a tube, that is an additional ingredient requirement because the resulting product. Let's slow down a bit because now I thought I understood where you were going, but in response to Judge Owen's question, I think you confused me again. Let's forget foie gras for a moment. Let's do eggs. If California says, I'm not banning the use of eggs, I'm only banning the use of caged eggs, that's not banning eggs, right? No, but let me apply that to our case. So if the only way to produce eggs is by caging them up, then I think you've got a little bit of a better argument, but I thought where Judge Owen's was saying is that if we don't agree with you that caging the birds is the only way to produce the eggs, then your argument starts to fall apart. If I may address the course hypothetical, if there was a federal statute that called the Egg Products Inspection Act, like there is poultry products, and it defined hundreds or thousands of products made from egg, cheese, omelets, vegetable omelets, all kinds of things, and one of the ingredients that it defines for an omelet is an egg, then for a state to come and it doesn't say it has to be cage-free, pasture-raised, any of those things, corn-fed, it just says ingredients in omelets, or even better here, what this says, Congress has said it's for the Secretary of Agriculture to set the ingredients, and the Secretary didn't impose any ingredients on the requirement for omelets, other than just they must contain eggs, for the state to then say, oh, they have to be cage-free eggs. Is it imposing a requirement on the ingredients in the egg product, in the omelet? All right. I think we've got the argument. Judge Ferguson, do you have any additional questions? Okay. We're fine. We've taken you over your time. Thank you, Your Honors. The state's got plenty of time left, though. Can you address counsel's argument that this is kind of tantamount to banning the ingredient altogether? Could the state say we're going to ban foie gras altogether and still not be in conflict with the PPIA? Your Honor, it could, and that follows necessarily from the Covellin and Pacadora cases, which state that the PPIA doesn't reflect a judgment that a state has to allow the sale within its borders of any product that can pass USDA inspection. And with regard to the record question about whether foie gras can be produced by means other than force feeding, the declarations that counsel pointed to are declarations by two foie gras producers that state that, quote, I am unaware of any verified method of producing foie gras from ducks without using a tube. So that's two individuals who state that they are unaware of a verified method. That is an evidence that shows that there is no known method for producing foie gras by means other than force feeding. But as I mentioned to the Court earlier, nothing in the case turns on that. Ingredient requirements do not address how an animal was fed, so it doesn't matter whether there are different means of creating a product based on how the animal was fed. A couple other points I wanted to raise is counsel discussed the language of Section 451 in response to your question, Judge Owens, and pointed to the language about, quote, unquote, burdens on commerce. But what Congress was talking about there with regard to burdens is the burdens that would arise if there was adulterated or mislabeled poultry in the stream of commerce because it would make consumers afraid to buy poultry if some producers were able to sell unsafe products. And so the burdens language there was not expressing an intent to allow commerce, you know, to create a national market in which producers are guaranteed the right to sell their products anywhere in the United States. I also wanted to address counsel's point or suggestion that California was engaging in some sort of artful draftsmanship to try to circumvent the purpose of the preemption clause here. And the distinction that we're drawing between an ingredient requirement, which goes to the designation of substances that can go in a product, and how the animal was fed is an artful draftsmanship. It's grounded in a distinction in the PPIA itself. The PPIA regulates slaughtering, processing, labeling, and packaging of poultry products, and it does not regulate or address animal feeding practices on the farm. So that distinction is grounded in the statute itself. The last thing I wanted to mention, the language that gets a lot of emphasis in the brief coming from National Meat, about the preemption clause quote-unquote sweeping widely, the court there was talking about the language in the preemption clause stating that requirements, the language in addition to or different than, and it used the language sweeps widely to explain that that language means that state requirements that fall within the scope of the meat inspection laws that are different other than ones that conflict. So that sweeps widely language is really about the in addition to or different than language and not about the scope of the PPIA. And the court stated in that paragraph that the preemption clause brings within it things that are state requirements that are in the scope of the PPIA, and California's law here is not. The last thing I will mention, as Judge Nguyen, you pointed out, the counsel's argument depends on understanding an ingredient to mean to have an expanded definition that encompasses within it the feeding method of the animal. And that understanding of ingredient requirement has no support in the PPIA itself, or when you look at what the USDA does when it regulates ingredients, it is not regulating ingredients by reference to how an animal was fed on the farm. It is regulating ingredients by reference to what ingredients can safely be used to process or package a finished poultry product. Oh, I'm sorry, I do want to say one more thing. Counsel pointed to the language about specially fed and fattened. That comes from the Food Labeling and Policy book, and two points quickly on that. One is this court has already rejected plaintiff's understanding of that language. In the first appeal in this case, the court observed that that language says nothing about force feeding, and even if it did, the policy book is informal agency guidance and cannot in itself preempt California law. If the court has no further questions, we'll submit. All right. Thank you very much, both sides, for your argument in this interesting case. The matter is submitted for decision by this court, and that concludes our calendar for today.
judges: Pregerson, Nguyen, Owens